1 Ryan Patrick Walter
2 33252 Globe Drive
3 Springville, California, 93265
4 (559) 756-3535

**FILED**

OCT 26 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

5 IN THE UNITED STATES DISTRICT COURT
6 EASTERN DISTRICT OF CALIFORNIA

7 Ryan Patrick Walter,
8     Pro Se Litigant,
9 vs.
10 Title IV D of the Social Security act,
11 Federal and State Secretaries, Legislative
12 Analysts, and United States Legislators
13 having voted to Enact Title IV
14 part D of The Social Security Act; Person
15 Serving as Court Clerk City of Bartlesville,
16 Oklahoma only identified as "Peggy" or
17 "Penny"; Washington County in the State of
18 Oklahoma; State's Attorneys for Oklahoma
19 Department of Human Services, Child
20 Support Services, Cindy Pickerill and
21 (other John Doe from June 6, 2021 phone
22 call); Kevin Buchanan in his Official
23 Capacity as District Attorney for
24 Washington County, Oklahoma; Amanda
25 Lynn Parsons (AKA Amanda Redding) and
26 her Bigamous Plurality Partner Charles

2:21 - CV 1985 - KJM AC PS

No.

27  David Redding, All Directors of Oklahoma

28  Department of Health and Human Services

29  And of Division of Child Support Services

30  from 2000 to 2021, John and Jane Does 1-50

31  In their Official and Personal Capacities, The

32  City of Bartlesville in the State of Oklahoma,

33  City of Bartlesville Oklahoma Police Officers

34  who's Names are not known.

35              Defendant(s).                    **COMPLAINT**

36                                               **Request for Injunctive**
37                                               **and Declaratory Relief**
38                                               **with Summary**
39                                               **Judgement on Merit**

40  _____ /

41                    **Introduction**

42  1.This action is for relief from the violations by defendants listed who are joint

43  and several actors in removing and preventing basic fundamental rights and

44  liberty interests of the Pro Se Litigant which are guaranteed by the United States

45  Constitution; ***Washington v. Glucksberg***, **521 U.S, 702 (1997) concerning**

46  **protections against governmental interference into the parents' fundamental**

47  **rights being those rights that are of such character of the principles that form**

48  **the foundation of all of our institutions of liberty and justice that to remove**

49  **them is to remove that foundation as substantive due process concerning the**

50   care, custody and control of their children; *Stanley v. Illinois*, 405 U.S. 645

51   (1972). **The Pro Se Litigant is a current Legal Studies Major in the University of**

52   **California System and CAL-law Pre-Law Scholar, having come to this point**

53   **following destruction of a 15-year oilfield career under the improper application**

54   **of IV-d policy also having caused parental alienation, extended periods of**

55   **homelessness and in an effort to learn to advocate for himself in this case and**

56   **to bring justice to an imbalanced and corrupt system of family law actors within**

57   **federal, state and county programs.**

58   2. Title IV part D of the Social Security Act defines the program as in the interests

59   of children as a Significant Government Interest, which on its face deserves Strict

60   Scrutiny of the Court which stare decisis exists in *Washington v. Glucksberg, Roe*

61   *v. Wade*, and others to be described as this petition is perfected. **This**

62   **Government Interest does not outbalance the liberty interests in the Liberty of**

63   **Contracts, Privacy Rights and substantive due process rights found through the**

64   **1st, 3rd, 4th, 5th, 6th, 7th, 9th and 14th amendment due process** clauses as substantive

65   and procedural due process breaches which, when brought to compel state

66   programs also violates sovereignty clause of the 10th amendment. **The IV D**

67   **program designates interest for the Federal Government in the individual child**

68   **and creates a 5th amendment procedural due process violation in shifting**

69 burden of proof, while the state programs would suffer under 14th equal

70 protections violations but in state codified law strictly forbids mention by Local

71 Child Support Agencies (IV D agencies) from stating interest in any individual but

72 in the interest of recovering State money expenditures of welfare, TANF and

73 any other social services such as medicare or Soonercare or Medical, from the

74 noncustodial parent, and so is duplicit for the LCSA being an entity of the IV d

75 Federal Program, becoming federalism.

76 3. Typically fathers who's wives have opted to "marry the state" leaving the

77 unrepresented fathers to face the awesome power of the federal and state

78 government with no legal aid available other than an ineffectual "Family Law Self

79 Help Desk" which only serves to misdirect, stall and prevent timely petition to the

80 correct venue, while suffering financial ruin under false allegations, improper ex-

81 parte hearings, and Bill of Attainder removing effective ability to travel effectively

82 to build an effective response or motion while burdened by unconstitutional shift

83 of burden of proof defending against the improper judgements ordered, or to

84 seek remedy for such improper actions as has been the case for the Pro Se

85 Litigant standing here.

86   4. Washington County Oklahoma has consistently refused to protect the

87   fundamental rights and privileges of marital contract by refusing to prosecute

88   Bigamy in this case, and has refused to enter the fraud into records of the child

89   support case brought within this case having been provided sufficient evidence of

90   the bigamy and marriage to the Pro Se Litigant by Amanda Parsons while Amanda

91   Parsons formed a bigamous plurality relationship with Charles David Redding who

92   also understood the marriage existed and had not been dissolved with two

93   children affected in these interests which belong within the penumbra of privacy

94   rights within the sanctity of marriage, as in *Griswold v. Connecticut*, 381 U.S. 479

95   (1965).

96   5. It may become necessary to join another claim for $240,000,000 associated

97   with this case which is standing against San Luis Obispo County in California,

98   however jurisdiction remains unclear at this time and Pro Se Litigant asks for

99   opportunity to amend and perfect should joinder become apparently correct for

100  this venue. The claim is associated through a prior case from a prior marriage by

101  which years of seeking audit for improper actions done in 2007 have produced

102  audit results confirming the improper actions and received by the Pro Se Litigant

103  in July 2021 after years of misdirection and shifting burden between Oklahoma

104  and California entities, the Oklahoma entities being the same in the present

105  petition and joined in harm to the Pro Se Litigant. The improper actions done in

106  the California LCSA (Local Child Support Agency) directly caused a crippling affect

107  on the Pro Se Litigant as entropic effect leading into the present case for financial

108  instability produced by the improper removal of driver license by Oklahoma for

109  non-payment while payment was made and is recorded with overpayment while

110  either Oklahoma or California agencies had withheld funds that had been paid on

111  time, with discovery in the present petition necessary to produce fact finding

112  results and clarification. This California case involves subornation of perjury by a

113  district attorney for compelling a spouse to testify against their spouse and to

114  commit perjury in the testimony while on record.

115  6. As IV D Agencies, San Luis Obispo County and Kern County both in California

116  being federal agencies, and both connected by material and subject matter to

117  similar organizations in Oklahoma this is a joined matter of federal question. Kern

118  County is servicing the Oklahoma IV D case for Oklahoma Department of Human

119  Services and Washington County Oklahoma IV D agency—Local Child Support

120  Agency—which was ordered $0 monthly obligation and $0 arrears due to the

121  fraud existing in their case, yet Kern County continues to report delinquency as if

122  the order does not exist, having reported delinquency to credit agencies on

123  October 13 2021 of $420. The current case in San Luis Obispo County was also

124 ordered $0 in December 2013 yet has continued to accrue arrearages in the same

125 manner, while the Pro Se Litigant had lacked litigious acuity in development of

126 that condition which now allows Pro Se objectively material legal understanding

127 through the years of study having allowed this case to now be understood and

128 brought forth with any reasonable sense of legal presence.

129 **Jurisdiction and Venue:**

130 Plaintiff is a resident of the State of California from 1972-2000, and from 2014-

131 Present; **Original Jurisdiction** exists with this court, as this is a federal question

132 relating to multiple elements of Federal Code Constitutional questions for

133 commerce clause, comity clause, due process both substantive and procedural

134 and equal representation of the law Amendments I, IV, V, VI, VII, XI and XIV to the

135 United States Constitution being Supreme Law of the Land and all State or local

136 laws repugnant to this Constitution being invalid law which must rescind.

137 **Diversity of Citizenship** holds this as the correct venue for individuals both private

138 and in official capacities; oppression in office, subornation of perjury and

139 destruction or falsification of records by defendants listed and the damages

140 exceed $75,000.00.

141 **Claim:**

142   Remedy is sought for harm absorbed by the Plaintiff, Ryan Patrick Walter,

143   originating in the breach of marital contract resultant of his wife, Amanda Lynn

144   Parsons who, having left the family home in Bartlesville, Oklahoma after 7 years

145   of cohabitating and presenting openly in public as husband and wife and

146   producing two children together while living in Oklahoma, with a notarized

147   affidavit of common law marriage and having health insurance coverage together

148   as a married couple with children. After weeks of absence Amanda and a friend

149   came to the home, walked into the house and attempted to physically remove

150   the two children from the home. Plaintiff called Bartlesville police for assistance.

151   The Bartlesville Police Officers questioned paternity and parental rights, and upon

152   examination of the notarized Common Law Marriage Affidavit the officers erred

153   in citing the notarized date to control when marriage began—this was incorercet

154   as Oklahoma law states cohabitation date—also on the affidavit—as defining the

155   marriage and to births of my children within a marriage with their mother, and

156   full rights as Fourteenth Amendment due process right to marry, establish a home

157   and bring up children **Meyer v. Nebraska**, . This right was ignored under color of

158   law and my children taken by threat of force with the officers stating that they

159   would "take it all the way" while grasping their guns, when asked what force

160   would be expected from them in removing children from their normal home.

161        Plaintiff had correctly cited Oklahoma case law as the date on the common

162 law affidavit of that which cohabitation had begun to define common law

163 marriage. *"Where the facts show that the mutual intention of a man and woman*

164 *was to consummate marriage, and that they cohabitated as man and wife,*

165 *holding themselves out to the public and to neighbors as such at all times, a*

166 *common-law marriage is established, and the burden is upon one who attacks*

167 *such marriage to conclusively disprove the same or show its illegality or invalidity"*

168 (***Thomas v. James* 1918 OK 241 171** P. 855 69 Okla. 285 Case Number: 8512

169 Decided: 04/23/1918 Supreme Court of Oklahoma). The Plaintiffs children were

170 kidnapped under the guise of a police officer maintaining order through the police

171 powers to arrest or to kill the Plaintiff, while the officers acting in that time, place

172 and manner caused the two children to be taken from their normal home and

173 effectively made a custody order based on such error and color of law to

174 overcome through demonstrated power and oppress the parental rights and will

175 of the Plaintiff to maintain his family.

176        **Merit:**

177 As found through *Griswold v Connecticut*, 381 U.S. 479 (1965) "Coming to the

178 merits, we are met with a wide range of questions that implicate the Due Process

179   Clause of the Fourteenth Amendment. Overtones of some arguments *482

180   suggest that Lochner v. New York, 198 U. S. 45, should be our guide. But we

181   decline that invitation as we did in West Coast Hotel Co. v. Parrish, 300 U. S. 379;

182   Olsen v. Nebraska, 313 U. S. 236; Lincoln Union v. Northwestern Co., 335 U. S.

183   525; Williamson v. Lee Optical Co., 348 U. S. 483; Giboney v. Empire Storage Co.,

184   336 U. S. 490. We do not sit as a super-legislature to determine the wisdom,

185   need, and propriety of laws that touch economic problems, business affairs, or

186   social conditions. This law, however, operates directly on an intimate relation of

187   husband and wife and their physician's role in one aspect of that relation. 482

188   The association of people is not mentioned in the Constitution nor in the Bill of

189   Rights. The right to educate a child in a school of the parents' choice—whether

190   public or private or parochial—is also not mentioned. Nor is the right to study any

191   particular subject or any foreign language. Yet the First Amendment has been

192   construed to include certain of those rights.

193   By Pierce v. Society of Sisters, supra, the right to educate one's children as one

194   chooses is made applicable to the States by the force of the First and Fourteenth

195   Amendments. By Meyer v. Nebraska, supra, the same dignity is given the right to

196   study the German language in a private school. In other words, the State may not,

197   consistently with the spirit of the First Amendment, contract the spectrum of

198   available knowledge. The right of freedom of speech and press includes not only

199   the right to utter or to print, but the right to distribute, the right to receive, the

200   right to read (Martin v. Struthers, 319 U. S. 141, 143) and freedom of inquiry,

201   freedom of thought, and freedom to teach (see Wieman v. Updegraff, 344 U. S.

202   183, 195)—indeed the freedom of the entire university community. Sweezy v.

203   New Hampshire, 354 U. S. 234, 249-250, 261-263; Barenblatt v. United States, 360

204   U. S. 109, 112; Baggett v. Bullitt, 377 U. S. 360, 369. Without *483 those

205   peripheral rights the specific rights would be less secure. And so we reaffirm the

206   principle of the Pierce and the Meyer cases. 483 In NAACP v. Alabama, 357 U. S.

207   449, 462, we protected the "freedom to associate and privacy in one's

208   associations," noting that freedom of association was a peripheral First

209   Amendment right. Disclosure of membership lists of a constitutionally valid

210   association, we held, was invalid "as entailing the likelihood of a substantial

211   restraint upon the exercise by petitioner's members of their right to freedom of

212   association." Ibid. In other words, the First Amendment has a penumbra where

213   privacy is protected from governmental intrusion. In like context, we have

214   protected forms of "association" that are not political in the customary sense but

215 pertain to the social, legal, and economic benefit of the members. NAACP v.

216 Button, 371 U. S. 415, 430-431. In Schware v. Board of Bar Examiners, 353 U. S.

217 232, we held it not permissible to bar a lawyer from practice, because he had

218 once been a member of the Communist Party. The man's "association with that

219 Party" was not shown to be "anything more than a political faith in a political

220 party" (id., at 244) and was not action of a kind proving bad moral character. Id.,

221 at 245-246" **GRISWOLD ET AL. v. CONNECTICUT.**

222 Common Law Marriage is as valid as any marriage in Oklahoma, **Witney v. Witney**

223 1942 OK 268. A common law marriage does not relieve any party from obligations

224 of marital contract as any other marriage with equal contractual marital duties,

225 including divorcing and dissolving property, custody and support by court order; a

226 liberty to have justice. Amanda Parsons and Plaintiff had an agreement to 50/50

227 custody without one designated custodial parent in the interest of stability while

228 reconciliation was the goal of Plaintiff as he understood his wife to only want a

229 break, and then was served summons for child support actions and his wife

230 having brought a knowing bigamous partner into the marital interests and affairs

231 and relationship of the parent and child becoming confused. The Washington

232 County District Attorney, Bartlesville Oklahoma Police, Bartlesville Municipal

233 Court Clerk, and Oklahoma Department of Health and Human Services were

234  contacted by the Plaintiff who sought justice on every level and was refused

235  justice, and **by refusing to enter the fact of the existing marriage and felony**

236  **fraud of bigamy into record becomes omission of forms from the file, 21 OS §21-**

237  **531. Destruction, Concealment of records while at the same time Title 18 USC**

238  **241 Conspiracy to Deprivation of Rights, Title 18 USC 242 Violation of Rights**

239  **under Color of Law** is breached with the Plaintiff's rights violated in Fourteenth

240  Amendment due process and equal protection of the law being together with 6th

241  Amendment removed while joining harm of bringing inequitable administrative

242  court action against the Plaintiff with Unclean Hands Doctrine entered by Amanda

243  Parsons per se of bigamy, directly causing and continuing the court action brought

244  under Title IV part D of the Social Security Act, as child support enforcement while

245  the children were illegally removed from the home of the Plaintiff, and with

246  financially crippling affect of child support enforcement actions brought against

247  the plaintiff resultant of the fraudulent conditions directly being the condition of

248  the equity sought through child support being a priori inequitable—unclean hands

249  of the bigamous mother having combined security of a putative marriage while

250  divorce and proper dissolution of property and child custody was denied the

251  Plaintiff without financial means to secure legal council. This has resulted in

252  continuous and expansive harm to the litigant who has been caused to spend

253   years of his life in pursuit of education in Legal Studies in order to begin to

254   formulate petition rather than in the pursuit of liberty interests normally provided

255   in the pursuit of happiness in raising his family under the abridgement of liberties

256   and civil rights violations as shared violation of Oklahoma Law, in miscarriage

257   **Title IV, D** child support having stigmatized a cultural detachment within state and

258   LCSA child support personnel and ministerial employees through their officers. A

259   responding state IV-D agency cannot refuse an initiating agency's request for

260   interstate services because of missing information or documents. **Federal**

261   **regulations at 45 CFR 303.7 govern intergovernmental IV-D case processing**.

262   They spell out the duties of the initiating agency, the interstate central registry,

263   and the responding agency. If the documentation received with a case is

264   incomplete and cannot be remedied by the central registry without help from the

265   initiating agency, the central registry must notify the initiating agency of the

266   missing information under **45 CFR 303.7(b)(2)(iii),** and also forward the case to

267   the local office for any action that can be taken pending necessary action by the

268   initiating agency under **45 CFR 303.7(b)(3)**. The local responding agency also has

269   responsibility to notify the initiating agency of additions or corrections that are

270   needed to the forms or documentation, **under 45 CFR 303.7(d)(2)(ii)**.

271    **Remedy:**

272    Injunctive and declaratory relief is sought. To order elimination of any remaining

273    costs, penalties, fines or fees associated with "child support." To order arbitrary

274    bail fees generated during the period of harm to be released by Bartlesville

275    Municipal Court, to issue injunctive protections from arrest on current failure to

276    pay warrants while pursuing liberty interests in Washington County Oklahoma in

277    petitioning for dissolution of marriage from Amanda Parsons on grounds of

278    adultery and bigamy and while pursuing restorative reunification services in that

279    county with his children. Declaratory order for Oklahoma Department of Human

280    Services to provide reunification services, ad hoc. As stated in claim served upon

281    Washington County Clerk; Fifty Million Dollars as replacement of lost income, and

282    with penalties associated with the prevention of opportunities and experiences

283    for both professional development and to provide for the society and

284    companionship of his children and for the actions and inactions so repugnant to

285    democracy and the Constitutional Fundamentals violated and abridged herein

286    together with the defamation done being remedied as well as allowing a financial

287    foundation to restore familial interests damaged through this collection of actions

288    and inactions which have caused such reprehensible harm to the liberty interests

289    of the Pro Se Litigant, Ryan Walter and such other relief as may be found just and

290    proper.

*[Signature]*   OCT/26/2021
                10/26/2021